IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**KRISTOPHER HEARRON**  **PETITIONER**
*also known as Khristoffer Mandell Hearron*

CASE NO. 3:18-cv-629-DPJ-JCG

**WARDEN UNKNOWN BANKS**  **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed by Petitioner Kristopher Hearron a/k/a Khristoffer Mandell Hearron. The Petition challenges a parole revocation and sentence calculation. Respondent has filed a Motion to Dismiss (ECF No. 24), and Hearron has filed a Response (ECF No. 28). Having considered the briefing, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that Respondent's Motion to Dismiss be granted and Hearron's request for habeas corpus relief denied. Hearron raises two grounds for relief. Ground One is moot. Ground Two fails to state a cognizable claim for federal habeas relief. Ground Two is also procedurally barred because Hearron failed to exhaust state remedies.

BACKGROUND

In December 1995, Hearron was convicted in the Circuit Court of Warren County, Mississippi, of possession of cocaine with intent to distribute. *Hearron v. State*, 68 So. 3d 699, 700 (Miss. Ct. App. 2011). In January 1996, he was sentenced as a habitual offender to thirty years in the custody of the Mississippi Department

of Corrections (MDOC). *Id.* Hearron served approximately twenty years of his sentence and was paroled on October 19, 2015. (ECF No. 24-6, at 1). Following a brief return to custody from October 4, 2015 to November 4, 2016, Hearron was again released on parole on November 4, 2016. *Id.* Hearron remained on parole until he was arrested in Puerto Rico on July 11, 2018 based on a parole violation warrant issued by MDOC and signed by Hearron's field officer.[1]

Hearron's parole was revoked on August 8, 2018, after he was found to be in violation of the terms of his parole agreement. (ECF No. 24-11, ECF No. 24-12). The parole board found it more likely than not that Hearron violated his parole agreement by failing to report to his field officer for a year, changing his residence without first obtaining permission, failing to obtain permission before leaving the State of Mississippi, and failing to abide by the law and notify MDOC that he had had acquired two new charges in Warren County for sale of controlled substances. (ECF Nos. 24-8, 24-9, 24-11, 24-12).

Ground One of Hearron's Petition challenges the procedures utilized during the 2018 parole revocation and the grounds for revocation. Ground Two challenges Hearron's sentence calculation and time remaining to be served.

---

[1] Under Mississippi law, parole field officers are permitted to issue arrest warrants for parole violations. Miss. Code Ann. § 47–7–27.

DISCUSSION

A. <u>Standard of Review</u>

Under 28 U.S.C. § 2254, a federal court may issue the writ of habeas corpus when a person is held in violation of the federal Constitution or laws, permitting a federal court to order the discharge of any person held by a state in violation of the supreme law of the land. *Frank v. Mangum,* 237 U.S. 309, 311 (1915). Before considering the merits of a petition under 28 U.S.C. § 2254, the Court must determine if all procedural steps necessary to preserve each issue raised for federal review have been taken. When considering the merits, the focus in a federal habeas proceeding is not whether there was an error in applying state law but instead whether there has been a denial of rights protected by the United States Constitution. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

B. <u>Ground One is Moot</u>

Hearron challenges the procedures utilized during the 2018 parole revocation and the grounds for revocation, claiming that he was denied due process of law and equal protection because he did not have a preliminary hearing within 72 hours of his arrest, he did not have a parole revocation hearing within 21 days of detention, he had permission to be in Puerto Rico, and the new charges against him in Warren County were based on an illegal informant's allegations. (ECF No. 1-1, ECF No. 6; ECF No. 12). Hearron's claims primarily rest upon MDOC's alleged violation of Miss. Code Ann. § 47-7-27, which governs parole revocation procedures. Section 47-7-27(4) provides that "the board shall hold an informal preliminary hearing within seventy-two (72) hours to determine whether there is reasonable cause to believe

3

the person has violated a condition of parole." Section 47-7-27(6)(a) provides that "[t]he board shall hold a hearing for any parolee who is detained as a result of a warrant or a violation report within twenty-one (21) days of the parolee's admission to detention." Hearron also relies on Mississippi Code Ann. § 47-7-27, which provides that "[u]nless good cause for the delay is established in the record of the proceeding, the parole revocation charge shall be dismissed if the revocation hearing is not held within the thirty (30) days of the issuance of the warrant."

Hearron was arrested on July 11, 2018. According to Respondent, "a preliminary determination was made with regard to Hearron's detention by a hearing agent following Hearron's arrest in Puerto Rico, albeit not within the first seventy-two (72) hours stated in the statute." (ECF No. 24, at 10). A parole revocation report shows that a hearing agent found "cause established" for waiver of a preliminary hearing. (ECF No. 24-9). Based on the field agent's report, the hearing agent recommended that Hearron be extradited to Mississippi to serve a term deemed appropriate by the parole board. *Id.* Hearron waived extradition on July 19, 2018. (ECF No. 24-10). "The parole board conducted a hearing on August 8, 2018, which was approximately seven days past the twenty-one (21) days provided by Miss. Code Ann. § 47-7-27(6)." (ECF No. 24, at 10). The parole revocation hearing was conducted within twenty-one days of Hearron's waiver of extradition. (ECF No. 24, at 10; ECF No. 24-11).

Since filing the § 2254 Petition in September 2018, Hearron was re-released on parole in February 2019. (ECF No. 24-1, at 5). Respondent argues that

4

Hearron's re-release on parole has rendered moot Hearron's challenges to the procedures utilized during the 2018 parole revocation proceedings. (ECF No. 24, at 6). In response, Hearron asserts that he "has been released from confinement, but he is currently on parole, which doesn't render petition moot." (ECF No. 28, at 1).

Article III, § 2, of the Constitution requires that litigants continue to have a personal stake in the outcome of a suit throughout all stages of federal judicial proceedings. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). In *Spencer v. Kemna,* the United States Supreme Court ruled that the collateral consequences of an alleged improper revocation of a habeas petitioner's parole, from which the petitioner allegedly continued to suffer even after he was released from prison, were not concrete injuries in fact sufficient to satisfy the case or controversy requirement of Article III. *Id.* at 8-18. The Supreme Court reasoned that the presumption that criminal convictions have collateral consequences could not be extended to revocations of parole. *Id.* at 14.

The Supreme Court concluded that a petitioner challenging parole revocation, who had since been be released from prison, had to demonstrate "some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequence' of the conviction – if the suit is to be maintained." *Id.* at 7. The Supreme Court found that claims of detriment in a future parole or

5

sentencing proceeding, impeachment in a future criminal or civil proceeding, use against the petitioner as a defendant in a future criminal proceeding, and possible effects on filing a civil rights lawsuit under 42 U.S.C. § 1983 are not sufficient to prove a live case or controversy. *Id.* at 14-18.

Hearron does not benefit from a presumption of injury because he does not challenge his conviction and sentence for possession of cocaine with intent to distribute. Rather, he challenges the 2018 revocation procedures. Hearron was again released on parole in 2019, and he has not alleged an actual injury flowing from the purportedly unconstitutional 2018 parole revocation procedures which can be redressed by a favorable judicial decision. Accordingly, Hearron's claims regarding the 2018 parole revocation procedures are moot and should be dismissed with prejudice.

C. <u>Ground Two Fails to Present a Cognizable Federal Habeas Claim and is Procedurally Barred for Failure to Exhaust State Remedies</u>

Hearron argues that MDOC failed to award him the appropriate earned-discharge credits against his sentence for certain periods he was on parole. The benefit of reduction in one's sentence through earned-discharge credits derives from state statutory law, specifically Miss. Code Ann. § 47-7-40, which provides that

> [t]he commissioner shall establish rules and regulations for implementing the earned-discharge program that allows offenders on probation and parole to reduce the period of supervision for complying with conditions of probation. The department shall have the authority to award earned-discharge credits to all offenders placed on probation, parole, or post-release supervision who are in compliance with the terms and conditions of supervision.

Miss. Code. Ann. § 47-7-40.

Hearron has not alleged the denial of a right protected by the United States Constitution. Hearron's claim amounts to an allegation that MDOC violated state procedural law. Questions of procedural due process on federal review involve "two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Hearron has not been deprived of life or property; therefore, his claim hinges on whether he has been deprived of a liberty interest without adequate procedural protections.

To create a liberty interest, a state law must contain "explicitly mandatory language," in that it must "requir[e] that a particular result is to be reached upon a finding that the substantive predicates are met." *Id.* at 462. Parole is discretionary in Mississippi, and Mississippi law "does not create any constitutionally protected liberty interest in parole to which procedural due process considerations attach." *Irving v. Thigpen*, 732 F.2d 1217-18 (5th Cir. 1984) (citing Miss. Code Ann. §§ 47–7–3, 47–7–17); *Smith v. Mississippi Parole Bd.*, 478 F. App'x. 97, 99 (5th Cir. 2012); *Scales v. Mississippi Parole Board*, 831 F.2d 565, 566 (5th Cir. 1987). Likewise, Mississippi law does not provide prisoners with a constitutionally protected liberty interest in earning good-time allowances under Miss. Code Ann. § 47-5-138 or trusty-allowances under Miss. Code Ann. § 47-5-138.1. This is because the decision whether to award these allowances is left to the discretion of prison officials. *See Thomas v. Jordan,* No. 07-60071, 2008 WL 4649095, at *1 (5th Cir. Oct. 21, 2008);

7

*Jones v. Buscher,* No. 3:13-CV-1039-CWR-FKB, 2014 WL 4723115, at *5 (S.D. Miss. Sept. 23, 2014) (addressing Miss. Code Ann. § 47-5-138.1); *Fincannon v. Epps*, No. 3:12-CV-604-FKB, 2013 WL 6019305, at *4 (S.D. Miss. Nov. 13, 2013) (addressing Miss. Code Ann. § 47-5-138); *see also Stone v. Hall*, No. 4:18CV100-GHD-JMV, 2018 WL 5726238, at *4 (N.D. Miss. Sept. 28, 2018) (addressing Miss. Code Ann. § 47-5-138.1), report and recommendation adopted, No. 4:18CV100-GHD-JMV, 2018 WL 5723945 (N.D. Miss. Nov. 1, 2018); *Cooper v. Dir. of Records*, No. 4:16CV173-SA-JMV, 2016 WL 4444873, at *2 (N.D. Miss. Aug. 23, 2016) (addressing Miss. Code Ann. § 47-5-138.1); *Coker v. Hood*, No. 3:04CV81-D-A, 2005 WL 1421502, at *2 (N.D. Miss. June 14, 2005) (addressing Miss. Code Ann. § 47-5-138).

Neither party has provided the Court with precedent specifically addressing whether Miss. Code Ann. § 47-7-40, Mississippi's earned-discharge credit statute, creates a liberty interest. The undersigned has found no case on point. However, the language of Miss. Code Ann. § 47-7-40 grants MDOC authority to "establish rules and regulations for implementing the earned-discharge program" and "authority to award earned-discharge credits." The discretion conferred upon MDOC indicates that the statute does not create a constitutionally protected liberty interest in acquiring earned-discharge credits. It was Hearron's burden to establish a liberty interest triggering constitutional protection, and he has not met that burden.

Additionally, Hearron has not raised the earned-discharge credit claim before the Mississippi Supreme Court in a procedurally proper manner. 28 U.S.C. § 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the

8

remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Mississippi law clearly provides a prisoner an available procedure to challenge MDOC's calculation of his sentence. See Miss. Code Ann. §§ 47-5-801 to 807. First, the prisoner must exhaust MDOC's Administrative Remedy Program. *Easterling v. State*, 283 So. 3d 1198, 1200 (Miss. Ct. App. 2019). If unsatisfied with the result, the prisoner then must seek judicial review by appealing the administrative decision to the appropriate circuit court (in the county where he is incarcerated) and, ultimately, to the Mississippi Supreme Court. *Putnam v. Epps*, 63 So. 3d 547, 551 (Miss. 2011) (addressing Miss. Code Ann. § 47-5-801, 47-5-807).

Hearron admits that he did not exhaust MDOC's Administrative Remedy Program. (ECF No. 12, at 1; ECF No. 12-1; ECF No. 28, at 2). He asserts that he "attempt[ed] to exhaust issue in court but he was not allowed by the Administrative Remedy Program, Adjudicator." (ECF No. 28, at 2). Hearron has presented a letter from the Administrative Remedy Program which states that his complaint was received, and "[i]t is not the policy of the Administrative Remedy Program to handle requests involving Parole Board matters." (ECF No. 12-1). This letter is presumably a response to Hearron's complaint regarding parole revocation procedures because the Mississippi Court of Appeals "has held on many occasions" that "[a]n inmate must challenge MDOC's calculation of credit for time served by obtaining a final ARP decision and then seeking judicial review . . . ." *Easterling,* 283 So. 3d at 1200

(Miss. Ct. App. 2019). Respondent submits that MDOC officials have confirmed that Hearron did not file a request for administrative remedy challenging the denial of earned discharge credits. (ECF No. 24, at 17). Hearron's bare allegation that he tried to exhaust Ground Two through the Administrative Remedy Program does not overcome § 2254's exhaustion requirement.

Because Hearron admits that he has not fairly presented to the Mississippi Supreme Court both the operative facts and theory of his claim in a procedurally proper manner, he is procedurally barred from pursuing Ground Two in federal court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999).[2] Hearron has not attempted to overcome the procedural bar by arguing and demonstrating cause and prejudice or a miscarriage of justice. *See Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2005). In sum, Ground Two should be dismissed with prejudice for failure to state a claim upon which relief may be granted, or alternatively, dismissed without prejudice for failure to exhaust state remedies.

---

[2]Respondent notes that Hearron did briefly raise his argument with regard to earned-discharge credits in a postconviction action before the Mississippi Supreme Court in in Cause No. 2018-M-1244. (ECF No. 24, at 12). "However, this argument was raised only in his motion for rehearing and, thus, was not properly before the court." Rehearing was denied on December 7, 2018, based upon Mississippi Rule of Appellate Procedure 27(h) which provides that "[m]otions for reconsideration, vacation or modification of rulings of the Supreme Court and the Court of Appeals on motions are generally not allowed." Ground Two was not presented to the Mississippi Supreme Court in a procedurally proper manner.

NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3)

After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 17th day of January, 2020.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE